THE STATE OF NEW JERSEY, at the relation of the board of health of the State of New Jersey,

*v.*

THE INHABITANTS OF THE TOWN OF. PHILLIPSBURG.

[Decided January 30th, 1909.]

Every municipality having a public sewer or system of sewers, drain or system of drains, legally constructed at the date of the passage of "An act to secure the purity of the public supplies of potable waters in this state," approved March 17th, 1899 (*P. L. 1899 p. 73*), is, under the first proviso of the first section, exempt from the provisions of the enacting clause, and, therefore, is exempt from the provision against dumping refuse on the bank of a river, as well as from the provision against discharging sewage into it,—the clearly expressed legislative intention being to exempt such municipalities from all the provisions of the act.

On bill for injunction. On application for preliminary injunction. Heard on bill and affidavits.

*Mr. Nelson B. Gaskill,* assistant attorney-general, for the complainant.

*Mr. John I. Blair Reiley,* for the defendant.

WALKER, V. C.

The bill alleges that the town of Phillipsburg maintains on the easterly bank of the Delaware river two garbage dumps, one of

which is located at the southerly extremity of the town at the juncture of Lopatcong creek and the river, and the other at the northerly end of the town, on which dumps the municipal authorities place and deposit, and suffer to be placed and deposited, and suffer to remain, domestic and factory refuse, consisting of ashes, decayed vegetables, house rubbish of all kinds, tin cans, old clothes, discarded shoes, broken barrels, glass bottles, and in fact everything which might be considered as domestic and factory refuse, which refuse, in normal times by reason of the natural slope of the ground at the two dumps will, and does, find its way into the waters of the river, and in case of freshets is washed directly into the waters of the river; that the city of Trenton now is and for some time past has been supplying its inhabitants with water for domestic use and obtains its public supply of water from the Delaware river below the town of Phillipsburg; that by reason of the refuse so placed and suffered to remain on the banks of the river at Phillipsburg, and the finding of its way into the waters of the river, those waters are greatly polluted, and the refuse so placed and suffered to remain on the banks of the river and finding its way into the waters of the river tends to corrupt and impair, and in fact does corrupt and impair, the quality of the water, and tends to render, and in fact does render, such waters injurious to health, and tends to pollute, and in fact does pollute, the public supply of water for domestic use in the city of Trenton; that these acts are directly within and subject to the provisions of an act of the legislature entitled "An act to secure the purity of the public supplies of potable waters in this state," approved March 16th, 1899 (*P. L. 1899 p. 73*), and that the town of Phillipsburg in operating and maintaining the dumps directly violates the provisions of the act.

The defendant does not deny the maintenance of the dumps in question, but contends that no factory refuse but only domestic and store refuse is deposited thereon; that because the town of Phillipsburg has a public sewer system constructed under municipal authority discharging its drainage and sewage into the river, it is within the first proviso of the act, and is therefore not liable to be enjoined in this suit; further, that it would be futile and inequitable to enjoin the town from using the dumps while

the refuse of the city of Easton, Pennsylvania, just across the river, having a population of about three times that of the town of Phillipsburg, is being dumped into the channel of the Delaware by boats and from wagons driven out upon the bridge which connects Easton and Phillipsburg.

The act of the legislature under which the bill was filed (*P. L. 1899 p. 73*) provides, among other things, in its first section, that no sewage, drainage, domestic or factory refuse, excremental or other polluting matter of any kind whatsoever which, either by itself or in connection with other matter, will corrupt or impair, or tend to corrupt or impair, the quality of the waters of any river, brook, stream or other reservoir from which is taken or may be taken any public supply of water for domestic use in any city or other municipality of this state, or which will render, or tend to render, such waters injurious to health, shall be placed in or discharged into the waters of any such river or other reservoir above the point from which any city or other municipality shall or may obtain its supply of water for domestic use, nor shall any such sewage, drainage, domestic or factory refuse, excremental or other polluting matter, be placed or suffered to remain on the banks of any such river or other reservoir above such point. The proviso under which it is claimed the town of Phillipsburg is exempt, enacts that the provisions mentioned shall not be held to apply to any city or other municipality of the state which, at the date of the passage of the act, had a public sewer or system of sewers, drain or system of drains, legally constructed under municipal authority, discharging its drainage or sewage into any such river or other reservoir. The public sewerage system of the town of Phillipsburg was, in fact, constructed under proper authority prior to the passage of the act.

The attorney-general argues that the proviso is not a shield to the town, and that it extends no further than to permit of the maintenance of the sewerage system which was lawfully constructed before the passage of the act, and that the proviso was plainly intended to preserve the usefulness and legality of a sewerage system which could not lawfully be constructed in the face of the statute, and that, as the proviso is only meant to protect an established system of sewers and drains, legally con-

structed under municipal authority, it is not intended to permit a municipal corporation, which has such a system, to place, or suffer to remain, upon the banks of a river, domestic or factory refuse, excremental or other polluting matter which, either by itself or in connection with other matter, will corrupt or impair, or tend to corrupt or impair, the quality of the water in such river for potable purposes; and he contends that the only rational way to read the proviso, as it mentions only sewage and drainage, is, that it does not affect deleterious matter dumped on the river bank, which it does not mention.

I am unable to adopt the construction contended for by the attorney-general. The enacting clause provides that no deleterious matter shall be discharged into the waters of a river used for potable purposes, and that no polluting matter shall be placed or suffered to remain upon the banks of such river. It is plausibly, but not convincingly, argued that as the proviso excepts from the operation of the enacting clause municipalities having a public system of sewers, legally constructed, the only exception intended is as to a sewerage system, because it would be unjust to have authorized a municipality to expend its money in the construction of a sewer emptying into a river, and to now require that sewer to be closed and discontinued, thereby casting large and unnecessary expenses upon a given municipality, and perhaps breeding pestilence therein by the forcible discontinuance of such a public necessity as a system of sewers. But it is to be observed in this connection that the act in question does not provide that where there is an existing sewerage system, that another method of sewage disposal shall be adopted by the municipality and then the existing system discontinued. On the contrary, the only provision is one whereby it is rendered impossible for municipalities thereafter to lawfully build such sewerage systems. And it is urged that all that is intended to be protected by the proviso is an existing sewerage system, and that the additional pollution of the water resulting from the dumping of deleterious matter on the river banks is prohibited without qualification.

To this I am unable to assent. There is nothing ambiguous about the proviso. Its language is as plain as it is general. It is that the act

"shall not be held to apply to any \* \* \* municipality \* \* \* which \* \* \* has a public sewer or system of sewers \* \* \* legally constructed \* \* \* discharging its drainage or sewage into any such river."

The statute is penal in character, and, doubtless, remedial also. The section authorizing the state board of health, instead of proceeding to recover the penalty prescribed for violation of the act, to file a bill in chancery in the name of the state on the relation of such board for an injunction to prohibit further violation, appears to be remedial. The general rule for the construction of provisos in statutes is that they are strictly construed and take no case out of the enacting clause which does not fall fairly within their terms; but in penal statutes the provisos must be liberally construed. And this, subject to the cardinal rule that the court must, if it can, give effect to the legislative intent to be gathered from the whole act. *26 Am. & Eng. Encycl. L. 680.*

In *Van Reipen* v. *Jersey City, 58 N. J. Law 262,* the supreme court said (at *p. 267*) : "The proviso of an act is sometimes resorted to for the interpretation of ambiguous or doubtful language in the enacting clause, but there is nothing ambiguous or doubtful for interpretation in this case." So, in the case in hand, there is nothing ambiguous or doubtful either in the enacting clause or in the proviso.

Regarded either as a remedial statute, in which case the proviso is to be strictly construed, or as a penal act, in which case it is to be liberally construed, the defendant prevails, because there is no ambiguity discoverable in the enactment, the clearly expressed legislative intention being to except from all the provisions of the act such municipalities as had sewerage and drainage systems at the time of its approval. There is nothing to construe—nothing to interpret. The defendant is clearly within the exemption in the proviso.

If we were required to go outside of the words and look to the subject-matter as an aid in interpretation, it would be found to be at least, if not more, reasonable to say that the legislature intended to except municipalities having the required sewerage system from the provision against dumping upon the banks of a river as well as against sewering into it, because it would be more

or less absurd to enjoin the dumping of deleterious matter upon the banks of a stream into which an unlimited quantity of filth could be discharged through the sewers. In other words, it seems reasonable that the legislature should have intended that in the case of municipalities lawfully discharging sewage into a river from a given area, and thereby polluting the stream, the same municipality, if it chose, might dump refuse upon the banks of the stream, for thereby its waters would doubtless not be any more effectually polluted. If a town is permitted to discharge its entire sewage into a river through a sewer system, it seems almost absurd to say that that may continue, but that the dumping of refuse upon the bank shall be prohibited because the refuse may find its way into the waters and corrupt, or tend to corrupt, them.

Because Easton is polluting the river much more than Phillipsburg (which is regrettable) is no ground for denying an injunction, even if the issuance of the writ would be "futile or inequitable," as claimed by the defendant. The act in question has been construed in this court and held to extend to a case of refuse which will impair, or tend to impair, the quality of the water. *State Board of Health* v. *Diamond Mills Paper Co., 63 N. J. Eq. 111, 117.* In this case the proviso is adverted to, but was not under review and was not considered. It is not because an injunction would be futile, which I do not concede, but it is because the defendant is saved by the proviso in the act that the injunction is denied.

If, in the general scheme upon which the state has entered for the purification of our potable waters, it is deemed necessary to prevent a municipality from dumping deleterious matter upon the bank of a river into which it may nevertheless discharge the sewage of its inhabitants numbering, as in the case in hand, several thousand people, the remedy lies with the legislature—the courts are powerless to extend it.